UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RAE ELLEN WAKEFIELD,

                      Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

<u>DECISION & ORDER</u>

19-CV-0655MWP

## **PRELIMINARY STATEMENT**

Plaintiff Rae Ellen Wakefield ("Wakefield") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB").  Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been assigned to, and the parties have consented to the disposition of this case by, the undersigned.  (Docket # 13).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 9, 11).  For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.  Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and Wakefield's motion for judgment on the pleadings is denied.

**DISCUSSION**

**I.      Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II.     **Wakefield's Contentions**

Wakefield contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 9-1, 12). Wakefield's sole challenge is that the ALJ's physical RFC determination is not supported by substantial evidence because she relied upon a stale opinion issued by state consulting physician Donna Miller ("Miller"), MD, and otherwise formulated an RFC based upon her own lay opinion of Wakefield's functional capacity. (Docket ## 9-1 at 14-21; 12 at 1-4).

III.    **Analysis**

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe

impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

Wakefield challenges the ALJ's physical RFC assessment on the grounds that it is unsupported by a medical opinion. (Docket ## 9-1 at 14-21; 12 at 1-4). Specifically, Wakefield maintains that portions of the physical RFC assessment are unsupported by a medical opinion because Miller only assessed limitations relating to her respiratory impairment and the ALJ's RFC included exertional limitations that were not assessed by Miller. (*Id.*). Wakefield also maintains that Miller's opinion was impermissibly stale because it did not account for subsequent deterioration of her hand and back impairments. (*Id.*).

At step two of the sequential process, the ALJ found that Wakefield had the severe impairments of osteoarthritis of her hands, degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disease ("COPD"), GERD, and pancreatitis. (Tr. 20).[1] Considering Wakefield's impairments, the ALJ determined that Wakefield maintained the physical RFC to perform sedentary work provided that she were permitted to stand for two minutes after every forty-five minutes of sitting, and that the work only required her to frequently engage in reaching in all directions, fingering, and grasping, occasionally engage in climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, and never climb ladders, ropes or scaffolds. (Tr. 22). Additionally, the ALJ determined that Wakefield should only occasionally be exposed to dusts, odors, pulmonary irritants, wetness, humidity, extreme temperatures or vibrations and should never be exposed to dangerous moving mechanical parts. (*Id.*).

---

[1] The administrative transcript (Docket # 5) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

In reaching this RFC determination, the ALJ relied in part on Miller's March 24, 2016 internal medicine examination of Wakefield. (Tr. 334-38). At that examination, Wakefield reported that she suffered from, among other things, arthritis in her back and hands, and COPD. (*Id.*). She indicated her hand and back pain was exacerbated by cold and damp weather and increased activity and ameliorated with medication, particularly Tylenol with codeine. (*Id.*). Wakefield reported she was able to care for her personal hygiene, prepare meals, shop, and perform household chores, including cleaning and laundry. (Tr. 329). At the time of the examination, Wakefield was working as a cashier two days per week for approximately five hours per day. (*Id.*).

Miller noted upon examination that Wakefield "appeared to be in no acute distress." (Tr. 334-38). Wakefield's gait and stance were normal, she could fully squat and walk on her heels and toes, and she used no assistive devices, needed no help changing for the examination or getting on and off the examination table, and was able to rise from a chair without difficulty. (*Id.*). With respect to Wakefield's musculoskeletal examination, Miller reported that Wakefield's cervical spine showed full flexion, extension lateral flexion bilaterally, and full rotary movement bilaterally. (*Id.*). Wakefield's thoracic spine contained no signs of scoliosis, kyphosis, or abnormality. (*Id.*). Her lumbar spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. (*Id.*). Miller noted that straight leg tests were negative bilaterally and that Wakefield had full range of motion in her shoulders, elbows, forearms, and wrists bilaterally, as well as in his hips, knees, and ankles bilaterally. (*Id.*). Wakefield's joints were also stable and nontender. (*Id.*). Miller also reported that Wakefield had no muscle atrophy in her extremities and her hand and finger dexterity were intact, with 5/5 grip strength bilaterally. (*Id.*).

Miller's opinion also incorporated her review of Wakefield's lumbosacral spine x-ray completed by Lawrence S. Liebman ("Liebman"), MD, on May 24, 2016.  (Tr. 338). Liebman opined that Wakefield's spine imaging demonstrated mild degenerative disc disease at L5-S1 and moderate narrowing of the L3-L4 and L4-L5 disc spaces.  (*Id.*).

Based upon her examination of Wakefield, as well as her review of Liebman's x-ray interpretation, Miller opined that Wakefield's prognosis was "stable" and did not assess any exertional limitations, although she did recommend that Wakefield avoid exposure to dust and irritants.  (Tr. 337).  The ALJ afforded Miller's opinion "significant weight," noting that despite imaging in the record demonstrating severe arthritis in Wakefield's hands and some degeneration in her back, Miller found no evidence of any "moving deficits" or "functional limitations" during the physical examination.  (Tr. 24).

The negligible objective findings observed by Miller during her examination of Wakefield are entirely consistent with the paucity of record evidence reflecting medical treatment Wakefield sought and received for impairments associated with her hands and back. In 2014, Wakefield reported that she suffered from arthritis, but denied suffering from arthralgias, myalgias, joint pain, or back pain and reported that she was able to perform her usual activities of daily living.  (Tr. 235-36, 294).  The first treatment notes documenting complaints of back or joint pain do not appear until December 2015.  (Tr. 259, 308).  Despite those complaints, nothing in the record suggests that Wakefield received any additional treatment to address her back or hands until August 2016, when her primary care physician ordered imaging of Wakefield's hands and spine.  (Tr. 364-72).  Although, as discussed below, those images demonstrated degenerative changes, there is no evidence that Wakefield sought or received ongoing treatment for these issues.  (*Id.*).  Rather, subsequent treatment records relate to her

ongoing substance abuse struggles and a possible syncope while driving. (Tr. 400-74). An examination of her joints in early 2018 demonstrated normal range of motion in her spine, wrists and fingers, with no active swelling or tenderness. (Tr. 381).

Turning to Wakefield's challenge, the burden is on Wakefield, not the Commissioner, to establish that she suffers from limitations resulting in a restricted RFC. *See Mitchell v. Colvin*, , 2015 WL 3970996, *4 (W.D.N.Y. 2015) ("[i]t is, however, [p]laintiff's burden to prove h[er] RFC"); *Williams v. Berryhill*, 2018 WL 987257, *5 (N.D.N.Y. 2018) ("[t]he plaintiff bears the burden of producing evidence to establish any functional limitations that would prevent him or her from engaging in substantial gainful activity") (citing 20 C.F.R. § 416.929(a)(3)). Further, I disagree with any suggestion that Miller's physical evaluation was narrowly limited to Wakefield's pulmonary impairments. (Docket # 9-1 at 16-17). Rather, review of the opinion demonstrates that Miller was informed of Wakefield's alleged hand and back impairments, and that she conducted a thorough physical examination of Wakefield, including her back and hands, in order to identify and assess any potential physical limitations. (Tr. 334-38). In doing so, Miller did not identify any deficits in motion, strength or sensation in Wakefield's spine or extremities. (*Id.*). Additionally, Miller reviewed an x-ray of Wakefield's lumbar spine that demonstrated some degenerative changes. (*Id.*). Although Wakefield is correct that Miller did not assess that she suffered from any exertional limitations and only opined that she should avoid environmental irritants, Miller's opinion was based upon a full physical evaluation of Wakefield, including assessment of her back and hand impairments.

Nor do I find that the ALJ failed to conduct a function-by-function assessment, failed to adequately explain the basis for the RFC she formulated, or reached her RFC determination without relying on a medical opinion and thus based it on her own lay

8

interpretation of the medical evidence. (*See* Docket ## 9-1 at 16-19; 12-1 at 2-3). Rather, review of the ALJ's decision demonstrates that in fashioning the RFC, the ALJ appropriately considered and weighed Miller's opinion, but ultimately assessed greater limitations than those opined by Miller, giving Wakefield and her testimony the benefit of the doubt. *See Burt v. Comm'r of Soc. Sec.*, 2020 WL 1467265, *5 (W.D.N.Y. 2020) ("[t]he ALJ was performing her duty by using [the consultative examiner's opinion] and observations when formulating the RFC despite [the examiner's] opinion lacking explicit limitations on some exertional abilities"); *VanNote v. Comm'r of Soc. Sec.*, 2019 WL 5865452, *7 (W.D.N.Y. 2019) ("[w]hile a medical opinion may be silent on some areas of limitation, that does not mean that the ALJ may not consider the opinion insofar as it describes limitations in some areas as support for the RFC").

According to the ALJ, although imaging demonstrated that Wakefield suffered from arthritis in her hands and degeneration in her back, Miller's assessment identified no physical deficits, and the medical records demonstrated minimal treatment for these conditions. (Tr. 24). The ALJ also considered Wakefield's allegations of debilitating physical limitations and determined that Wakefield was not as limited as she alleged. (Tr. 24-25). Despite this, the ALJ formulated an RFC that limited Wakefield to sedentary work with limitations in postural and arm movements and a sit/stand option that accounted for Wakefield's testimony that her impairments affected these physical capabilities. (*Id.*).

In her decision, the ALJ made clear that the exertional limitations that she assessed, particularly the sit/stand option, were based upon Wakefield's allegations and her testimony concerning her sitting restrictions. (Tr. 24). Indeed, other than Wakefield's statements concerning her exertional limitations, there is little in the record to support a finding that her impairments caused such limitations. Nothing in the record besides Wakefield's own

9

statements supports the conclusion that she required a sit/stand option to perform the requirements of sedentary work.  Rather, the medical records demonstrate few complaints of pain in her back and hands; indeed, several records suggest that she denied back pain and that examinations of her spine demonstrated normal range of motion with no tenderness (Tr. 236, 294, 299-300, 303, 381), and that she received sparse and conservative treatment to address these impairments, including Tylenol with codeine, exercise, and heat (Tr. 46-47, 259, 308-09, 364-72, 376, 381-82).  Similarly, the record demonstrates that Wakefield was able to engage in significant activities of daily living, including working part-time, caring for her personal hygiene, preparing meals, shopping, and performing household chores including cleaning and laundry, despite these impairments. (Tr. 36-37, 183-86, 231, 236, 258, 329, 331, 335).  In sum, based upon the record in this case, I find that remand is not warranted on the grounds that the ALJ included greater limitations in her RFC determination than those opined by Miller or assessed a sit/stand option based upon Wakefield's own testimony.  *See*, *e.g.*, *Lesanti v. Comm'r of Soc. Sec.*, 2020 WL 500986, *6 (W.D.N.Y. 2020) ("[t]he fact that the ALJ afforded [p]laintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand"); *Beaman v. Comm'r of Soc. Sec.*, 2020 WL 473618, *5 (W.D.N.Y. 2020) ("[p]laintiff's argument that the ALJ based her highly specific RFC based upon her own lay opinion necessarily fails[;] [i]t is clear that the ALJ fashioned her RFC finding by referring to [the consultative examiner's opinion] and incorporating additional restrictions based on [p]laintiff's own testimony"); *Catalfamo v. Berryhill*, 2019 WL 1128838, *2 (W.D.N.Y. 2019) (rejecting argument that ALJ improperly substituted his own lay opinion where ALJ gave "little weight" to two medical opinions and "impose[d] more restrictions than th[ose] two opinions suggested were necessary"); *Baker o/b/o Baker v. Berryhill*, 2018 WL 1173782, *2 (W.D.N.Y.

2018) ("[w]here an ALJ makes an RFC assessment that is *more* restrictive than the medical opinions of record, it is generally not a basis for remand") (emphasis in original).

Wakefield's challenge to the ALJ's reliance on Miller's opinion because it was impermissibly stale is similarly unavailing. (Docket ## 9-1 at 17-18; 12 at 2-3). Although Wakefield is generally correct that "an ALJ should not rely on 'stale' opinions – that is, opinions rendered before some significant development in the claimant's medical history," *Robinson v. Berryhill*, 2018 WL 4442267, *4 (W.D.N.Y. 2018), and that "[m]edical source opinions that are stale and based on an incomplete medical record may not be substantial evidence to support an ALJ['s] finding," *Davis v. Berryhill*, 2018 WL 1250019, *3 (W.D.N.Y. 2018) (alterations, citations, and quotations omitted), "a medical opinion is [not] stale merely because it pre-dates other evidence in the record, where . . . the subsequent evidence does not undermine [the opinion evidence]," *Hernandez v. Colvin*, 2017 WL 2224197, *9 (W.D.N.Y. 2017) (citing *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order)); *accord Morgan v. Astrue*, 2010 WL 3723992, *13 (E.D. Tenn.) ("[i]n every claim for DIB or SSI before an ALJ, some time will elapse between the date that a medical opinion about the claimant's condition is rendered and the date that the ALJ considers that opinion[;] [f]requently, new evidence about the claimant's condition will come to light during the intervening period of time[;] [t]he SSA's disability determination process would cease to function if ALJs could not rely on a medical opinion simply because some new evidence entered the record after the opinion was provided"), *report and recommendation adopted by*, 2010 WL 3723985 (E.D. Tenn. 2010).

Wakefield was evaluated by Miller on March 24, 2016, at which time she demonstrated no significant physical limitations caused by her back and hands, despite imaging of her spine which demonstrated mild degenerative disc disease. (Tr. 334-38). Wakefield

maintains that her back and hand impairments deteriorated subsequent to Miller's evaluation, as evidenced by x-rays of her hands and spine taken approximately five months later. (Docket # 9-1 at 18). Nothing in those x-rays or any other medical records, however, demonstrates that Wakefield's impairments deteriorated significantly subsequent to Miller's evaluation. (Tr. 364-65). Indeed, consistent with the x-ray taken on March 24, 2016, the subsequent image of Wakefield's spine continued to demonstrate degenerative changes, primarily at L5-S1, L3-L4, and L4-L5. (*Compare* Tr. 338 *with* Tr. 365). Further, subsequent examinations suggested minimal objective abnormalities in Wakefield's spine or hands. (Tr. 381 ("[a] general joint exam is normal with full range of motion of spine, . . . wrists, fingers[;] . . . no active swelling or tenderness[;] [c]hanges in hands consistent with [osteoarthritis]")).

        In this case, Wakefield simply has not identified record evidence demonstrating a deterioration in her functional ability that would render Miller's assessment unreliable. Moreover, in assessing Wakefield's RFC, the ALJ discussed and explicitly considered medical records post-dating the medical opinion evidence and credited portions of Wakefield's hearing testimony.[2] (*See* Tr. 23 (citing Tr. 364-65)). In short, Wakefield neither points to any medical evidence suggesting that after Miller's examination her condition deteriorated causing disabling functional limitations, nor identifies any relevant evidence post-dating the medical opinion that the ALJ failed to consider. For these reasons, I find that substantial evidence supports the ALJ's RFC assessment. *See*, *e.g.*, *Ambrose-Lounsbury v. Saul*, 2019 WL 3859011, *3-4 (W.D.N.Y. 2019) ("[claimant] has not shown significant developments in her medical history following [consultative examiner's] opinion that render it stale[;] . . . [claimant's] only new ailment after

---

[2] For reasons explained in her decision, the ALJ did not fully credit Wakefield's account of the functional limitations arising from her impairments. (*See* Tr. 24-25). Wakefield does not challenge the ALJ's credibility determination.

[consultative examiner's] examination was the 'left ankle swelling'[;] . . . [b]ut the record does not evidence any limitation from that swelling that the ALJ did not account for in the RFC[;] [s]o the ankle swelling is hardly a 'significant development'"); *Sexton v. Berryhill*, 2018 WL 1835494, *7 (W.D. Okla.) (finding no error where ALJ relied on opinion evidence that was completed "before all of the medical evidence was in and [[p]laintiff] became more severe[;] . . . [h]ere, however, the opinions of the state agency physicians are relevant to the period to which they apply, and [p]laintiff does not identify any evidence of a subsequent deterioration in [p]laintiff's condition that was not reviewed and considered by the ALJ[;] [t]he ALJ expressly stated that additional evidence . . . was received and admitted into the record subsequent to the hearing and that he reviewed this evidence and considered it in his determination[;] . . . [b]ecause the ALJ independently reviewed and considered the post-2014 evidence, and [p]laintiff points to no credible evidence inconsistent with the RFC, the undersigned finds no reversible error in the ALJ's reliance on the agency physicians' opinions"), *report and recommendation adopted by*, 2018 WL 1858255 (W.D. Okla. 2018); *Morgan v. Astrue*, 2010 WL 3723992 at *13 ("[i]n this case, [p]laintiff has not shown that the additional objective evidence he cites was inconsistent with the opinions of [consultative physicians][;] . . . [p]laintiff has not explained how a review of the new evidence he cites would have changed the opinions provided by [consultative physicians][;] [a]ccordingly, the [c]ourt cannot find error in the ALJ's decision to rely upon the doctors' opinions").

## **CONCLUSION**

After a careful review of the entire record, this Court finds that the Commissioner's denial of DIB was based on substantial evidence and was not erroneous as a matter of law.  Accordingly, the ALJ's decision is affirmed.  For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 11)** is **GRANTED**.  Wakefield's motion for judgment on the pleadings **(Docket # 9)** is **DENIED**, and Wakefield's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

                                                                 *s/Marian W. Payson*
                                                         MARIAN W. PAYSON
                                                   United States Magistrate Judge

Dated:  Rochester, New York
          June 11, 2020